## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

David Jannetta, et al.,                    Case No. 19-cv-2622 (ECT/TNL)

                    Plaintiffs,

v.                                          **ORDER**

Minnesota Department of Human
Services, et al.,

                    Defendants.

Steven Hogy, Merlin Adolphson, and Kenneth Daywitt, MSOP, 1111 Highway 73, Moose Lake, MN 55767 (pro se Plaintiffs)[1]; and

Aaron Winter and Molly Beckius, Assistant Attorneys General, Office of the Minnesota Attorney General, 445 Minnesota Street, Suite 1400, St. Paul, MN 55191 (for Non-Doe Defendants).

## I.  INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion to Compel Supplemental Answers to Interrogatories (ECF No. 50); Motion for Appointment of Counsel (ECF No. 58); and Motion to Preserve Evidence (ECF No. 62).  For the following reasons, the Court grants in part and denies in part Plaintiffs' motion to compel and denies the remaining motions.

---

[1] Plaintiffs Hogy, Adolphson, and Daywitt informed the Court via a letter filed January 13, 2021, that the remaining Plaintiff, David Jannetta, passed away on January 1, 2021.  (ECF No. 64.)  Plaintiffs Hogy, Adolphson, and Daywitt continue with this suit.  (*Id.*)

## II.  BACKGROUND

Plaintiffs have filed suit against the Minnesota Department of Human Services and several employees of the Minnesota Sex Offender Program ("MSOP").  Dispositive motion practice has reduced the complaint to claims for prospective injunctive relief against the individual Defendants in their official capacities for violation of Plaintiffs' First and Fourth Amendment rights, insofar as those claims relate to MSOP Policy 420-5230, "Media Possession by Clients" (hereinafter "the Policy").[2]  (Order Accepting R&R at 1-2, ECF No. 30.)

## III.  ANALYSIS

Plaintiffs have filed three motions.  The Court addresses each in turn.

### A.  Motion to Compel

In their Motion to Compel, Plaintiffs argue that 8 of the 15 interrogatories in their First Set of Interrogatories were answered incompletely and evasively, as well as "contained objections that were not apropos to the interrogatory requests."  (ECF No. 50 at 2.)  Plaintiffs ask the Court to order Non-Doe Defendants (hereinafter "Defendants") to answer the interrogatories at issue and to award each Plaintiff "reasonable costs in the sum of $300" as Defendants' refusal to answer the interrogatories was "without substantial justification."  (*Id.* at 11-12.)   Defendants oppose the motion, arguing Plaintiffs either do

---

[2] At the time Plaintiffs filed this action, the issue date of the Policy was August 6, 2019 and its effective date was September 3, 2019.  (Ex. 1 to Decl. of Aaron Winter, ECF No. 19-1 (hereinafter cited as "the Policy").)  This Policy is reviewed annually.  (*Id.* at 7.)  It would appear that this policy has since been updated.  (*See* MSOP Policy 420-5230 "Media Possession by Clients" issued and effective July 10, 2020, ECF No. 51; *cf. Stone v. Jesson*, No. 11-cv-951 (WMW/HB), 2019 WL 7546630, at *1 n.1 (D. Minn. Dec. 3, 2019) (noting that the 2007 Media Policy "has since been amended several times.").

not specify the material they are trying to compel or that the interrogatories otherwise "ask for information that has either otherwise been disclosed, is irrelevant, or would be unduly burdensome to provide even if minimally relevant." (Non-Doe Defs.' Mem. of Law in Opp'n to Pls.' Mot. to Compel ("Defs.' Mem. on Mot. to Compel") at 2, ECF No. 52.)[3]

### 1. Legal Standard

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(1). If a party fails to answer an interrogatory, an opposing party may move to compel the answer. Fed. R. Civ. P. 37(a)(3)(iii). When filing a motion to compel discovery under Rule 37, the motion or accompanying memorandum must contain "the remedy sought, together with an argument for why the requested remedy is authorized and justified." D. Minn. LR 37.1(f).

As to the proper scope of an interrogatory, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Rule 26(b)(1) "is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *United States v. R.J. Zavoral & Sons, Inc.*, No. 12-cv-668 (MJD/LIB), 2014 WL 12756820, at *2 (D. Minn. Jan. 17, 2014) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978));

---

[3] The Court notes that Plaintiffs filed a reply brief on October 1, 2020. (ECF No. 56.) As Plaintiffs did not have prior approval to file this reply brief, it was not considered. (*See* Pretrial Scheduling Order at 2, ECF No. 33 ("Reply briefs are not permitted for nondispositive motions without prior approval of the Court."); *see also* D. Minn. LR 7.1(b)(3) ("Except with the court's prior permission, a party must not file a reply memorandum in support of a nondispositive motion.").)

*see also Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012) ("Relevance is construed broadly at the discovery stage."). "Some threshold showing of relevance must be made," however, "before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); *see Haddley v. Next Chapter Tech., Inc.*, No. 16-cv-1960 (DWF/LIB), 2018 WL 2180253, at *3 (D. Minn. Mar. 23, 2018) ("[T]he scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation."). Further, "even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quotation omitted); *see* Fed. R. Civ. P. 26(b)(1).

This Court "has very wide discretion in handling pretrial discovery." *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) (quotation omitted). "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.'" *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment). "[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Vallejo*, 903 F.3d at 742 (quotation omitted). Considerations bearing on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Vallejo*, 903 F.3d at 742-43.

Plaintiffs have alleged that the Policy, which largely prohibits the possession and viewing of videos that are unrated or not rated by the Motion Picture Association of America ("MPAA"), violates their rights. (*See generally* Compl., ECF No. 1.) These claims have been previously winnowed through dispositive motion practice to First and Fourth Amendment claims, and, as previously summarized by the Court, the question that remains "is whether the particular limitations placed upon civil detainees by MSOP officials concerning not rated or unrated media would survive review under a modified *Turner* analysis." *Jannetta v. Minnesota Dep't of Human Servs.*, No. 19-cv-2622, 2020 WL 3405430, at *9 (D. Minn. June 1, 2020)[4] (citing *Turner v. Safley*, 482 U.S. 78 (1987)), *report and recommendation accepted*, 2020 WL 3402418 (D. Minn. June 19, 2020)[5]; *see also Stone*, 2019 WL 7546630, at *5 (outlining the modified *Turner* factors considered in this District). With the proportionality standard and scope of Plaintiffs' surviving claims in mind, the Court considers each challenged interrogatory response.

## 2. Interrogatory Number 2

Plaintiffs requested Defendants "[i]dentify each person since 2007 who is or has been on the Media Review Committee, their educational background, their job position in which they work(ed) at MSOP, their expertise related to determination of what is

---

[4] Also available at ECF No. 29 at 19.
[5] Also available at ECF No. 30.

appropriate for patient viewing, and describe in detail the scope of that knowledge and how they obtained it."  (Pls.' First Set of Disc. Reqs. to Defs. ("Pls.' Disc. Reqs.") at 6, Ex. 1 to Decl. of Molly Beckius ("Beckius Decl."), ECF No. 53-1.)

Defendants objected that this request was unduly burdensome, and at least partially irrelevant.  (Non-Doe Defs.' Resps. to Pls.' First Set of Disc. Reqs. ("Defs.' Resps.") at 4-5, Ex. 2 to Beckius Decl., ECF No. 53-1.)  Defendants did provide to Plaintiffs "names of the individuals who have developed the three most recent media policies, including the one at issue in this case and its immediate predecessors."  (Defs.' Mem. on Mot. to Compel at 3.)  Defendants have also "disclosed documentation including media review minutes dating back to 2013, which identify the name of the media reviewed, the rating, and whether it was prohibited or permitted.  In many instances, these documents also indicate the members present at the media review committee meeting and the reason for the denial."  (*Id.* at 4.)  Plaintiffs argue Defendants' objection is without merit generally because they are "vague, misleading, [and] untrue" and specifically argue the objection misstates the facts in record because Plaintiffs' complaint "clearly state[s] that Defendants on the [Media Review Committee] are unqualified to do media review."  (Pls.' Mot. to Compel at 4 (citing Compl. ¶ 23).)

As Defendants correctly argue, "the only remaining claim in the case does not challenge the qualifications" of individuals on the Media Review Committee ("MRC").  (*Id.*)  The remaining claim in this suit focuses on the Policy itself.  Defendants have provided information relating to individuals who have developed the Policy at issue, as well as previous versions of the Policy.  This is relevant information, as these individuals

will be able to comment further on the reasoning behind the Policy's partial prohibition of unrated and not rated videos.  It would be unduly burdensome and disproportional for Defendants to produce every member of the MRC going back over 13 plus years, especially when the remaining claims relate to the Policy and not any specific person.

### 3.  Interrogatory Number 6

Plaintiffs requested Defendants "[i]dentify and describe in detail the understanding and bearing of the Kruger Settlement see: *Kruger v. Goodno*, Civ. No. 05-2078 (JRT/FLN) (D. Minn.) as it applies to Plaintiffs."  (Pls.' Disc. Reqs. at 7.)  Defendants objected to this request on the basis that it is irrelevant as "Plaintiffs were not involved in the *Kruger* lawsuit, and the *Kruger* lawsuit did not concern the media review policy at issue in this case."  (Defs.' Resps. at 7.)

The Court agrees.  While the 2007 Media Policy was adopted as part of the *Kruger* settlement and Plaintiffs challenge an amended version of that policy, Plaintiffs were not parties to the settlement.  *See Ivey v. Mooney*, No. 05-2666 (JRT/FLN), 2008 WL 4527792, at *1-2 (D. Minn Sept. 30, 2008) (discussing the history of the *Kruger* settlement and the resulting new media policy for MSOP clients).  Further, "Kruger is deceased, and nothing in the agreement indicates that the obligations undertaken by MSOP pursuant to that agreement would survive Kruger's death or that court approval would be necessary for future [media] policy revisions."  *Stone*, 2019 WL 7546630, at *4; *see id.* ("The 2007 Media Policy did not establish a ceiling for restrictions on the rights of civilly committed individuals to receive and consume media.")

The inquiry in this matter, similar to *Stone*, is whether Defendants' application of the Policy violated Plaintiffs' First and Fourth Amendment rights under the modified *Turner* test. The *Kruger* settlement is irrelevant to Plaintiffs' claims and thus, Defendants should not be required to produce any information in response to this interrogatory.

### 4. Interrogatory Number 7

Plaintiffs requested Defendants "[i]dentify all persons who train the MSOP staff in acceptable media possession for each patient, and their role in such training." (Pls.' Disc. Reqs. at 7.) Defendants objected to this interrogatory as irrelevant because the "lawsuit does not allege that Defendants have failed to train staff" on the Policy and because the request "appears to refer to MSOP staff as a whole" as opposed to specifically addressing MRC members. (Defs.' Resps. at 8.) Defendants nevertheless answered the interrogatory, describing the general makeup of the MRC without listing specific persons. (*Id.*) Defendants have further provided Plaintiffs with position descriptions of the various members of the MRC, as well as their minimum qualifications. (Defs.' Mem. on Mot. to Compel at 6.) Plaintiffs' objection to Defendants' answer reasserts the relevance of their interrogatory and makes clear their aim to argue that the Policy does not comport with the *Kruger* settlement. (Pls.' Mot. to Compel at 6.) As discussed *supra*, the *Kruger* settlement is not relevant to the remaining claims in this matter, and, contrary to Plaintiffs' position, does not govern the current Policy. *See Stone*, 2019 WL 7546630, at *4. Plaintiffs' motion further fails to state how Defendants' response failed to answer adequately their interrogatory. *See* D. Minn. LR 37.1(f). Thus, Plaintiffs have failed to demonstrate how Defendants have not comported with Rules 26 and 33.

### 5.  Interrogatory Number 8

Plaintiffs requested Defendants "[i]dentify all training manuals and specific training given to the staff who are assigned to reviewing media for patient possession."  (Pls.' Disc. Reqs. at 7.)  Defendants again objected that staff training was not relevant to whether the Policy's prohibition on review of unrated or not-rated videos violated Plaintiffs' First and Fourth Amendment Rights, but nevertheless provided the same answer they provided in response to interrogatory number 7.  (Defs.' Resps. at 8-9.)  Defendants also state "there are no specific training documents related to reviewing media, other than the policy, which has been provided" to Plaintiffs.  (Defs.' Mem. on Mot. to Compel at 6.)  In objecting to Defendants' answer to interrogatory number 8, Plaintiffs refer to their objection to Defendants' response to interrogatory number 7 without further comment.  (Pls.' Mot. to Compel at 6-7.)  Because Plaintiffs again fail to demonstrate how Defendants' response was insufficient, and because these documents do not exist, the motion to compel as it relates to this interrogatory fails.

### 6.  Interrogatories Number 9 and 10

These interrogatories are largely intertwined and thus the Court discusses them in tandem.  In interrogatory number 9, Plaintiffs requested Defendants "[i]dentify all evidence, including records, statements, and all other bases supporting Defendants [sic] belief that unrated and non-rated movies at MSOP are more difficult to review than any other movie patients have reviewed by the Media Review Committee monthly."[6]  (Pls.'

---

[6] According to the Policy, an MSOP client may request review of R-rated videos; Canadian Motion Picture Association "18A" rated videos; "TV-MA" rated videos; or a video on the prohibited list which has not already been appealed at a rate of once per month. (*See* the Policy at 4.)

Disc. Reqs.' at 7.)  In interrogatory number 10, Plaintiffs requested Defendants "[i]dentify including citations to facts and evidence, the difference in review of unrated or not rated movies opposed to rated movies such as R or TV shows rated TV-MA."  (*Id.* at 8.)

Defendants objected to interrogatory 9 on the basis that the term "'all evidence' is vague and overly broad."  (Defs.' Resps. at 9.)  Defendants did not object to interrogatory number 10.  (*Id.* at 10.)  In answering interrogatory number 9 Defendants did, however, provide a general response justifying the Policy's prohibition of unrated videos and partial prohibition of not rated videos, including why it is time-intensive to review not rated media and how, in MSOP's experience reviewing media, unrated videos often contain contraband.  (*Id.* at 9-10.)  Defendants relied on the same answer when responding to interrogatory number 10 (*Id.* at 10.)  Plaintiffs' objection to Defendants' answers comprises mostly of an argument against the Policy, namely that "[r]efusing to review media based on Defendant [sic] answers transcends punishment," and that "[s]taff convenience is not excuse [sic] to punish, this also does not rise to the legitimate therapeutic or institutional interests."  (Pls.' Mot. to Compel at 8.)[7]

Whether Defendants may prohibit unrated and not rated videos under the Policy is the crux of the surviving claims in this action.  When considering Defendants' Motion to Dismiss under Rule 12 of the Federal Rules of Civil Procedure, the Court recommended denying Defendants' motion to dismiss the First Amendment claim, reasoning in part that

---

[7] Plaintiffs also argue that Defendants' answer to this interrogatory is insufficient because "it is not consistent with the current policy in place when the responses were [written]." (*Id.*)  This seems to be the reason Plaintiffs filed the 2020 version of the Policy.  (*See* ECF No. 51.)  This version of the Policy defines permitted not rated videos slightly differently than the 2019 version of the Policy.  (*Compare* the Policy at 4 *with* ECF No. 51 at 4.)

unrated and not rated videos are further restricted than R-rated videos under the Policy (which may be reviewed for approval), and therefore this provision of the Media Policy may not survive a modified *Turner* analysis. *Jannetta*, 2020 WL 3405430, at \*6-7;[8] *see also id.* at 7 ("A more-developed record is necessary to review properly plaintiffs' First Amendment claim under the modified *Turner* approach.").[9]

Defendants argue "[a]lthough Plaintiffs may disagree with Defendants' reasoning for the policy, they have not actually pointed to any materials or information that Defendants have failed to provide." (Defs.' Mem. on Mot. to Compel at 7-8.) Defendants, however, have not provided any records or statements forming the bases for the contours of the Policy as it relates to unrated and not rated videos, instead objecting to interrogatory number 9 as vague and overly broad and only answering the interrogatories with general reasons for the Policy.

Defendants' bases for treating unrated and not rated videos differently under the Policy than R-rated videos and other media that is reviewed by the MRC will be an important part of the modified *Turner* analysis. The justification for why these videos are often unreviewed is highly relevant. Therefore, the Court will grant the motion in part as it relates to interrogatories 9 and 10. Defendants shall be required to answer and list any official records, written statements, policies, or documents from the last five years that address why unrated and not rated videos are difficult to review and justify different

---

[8] Also available at ECF No. 29 at 14-15.
[9] Also available at ECF No. 29 at 15.

treatment under the Policy than videos that may be reviewed, to the extent this information exists.

### 7. Interrogatory Number 11

Plaintiffs requested Defendants "[i]dentify the number of movies reviewed each month within MSOP since 2007 and the ratio of movies prohibited as opposed to permitted, additionally, how many of those movies were unrated or not rated both permitted and prohibited." (Pls.' Disc. Reqs. at 11.) Defendants objected to the interrogatory as unduly burdensome and overly broad, noting that this would encompass review of 13 years' worth of electronic and paper records. (Defs.' Resps. at 10-11.) Defendants also answered they would disclose MRC meeting minutes dating back to 2013. (*Id.* at 11; *see also* Defs.' Mem. on Pls.' Mot. to Compel at 8 (stating that Defendants produced media review minutes and the master lists of media reviewed which identifies the name of the media, its rating, and whether it was prohibited or permitted).) In their motion, Plaintiffs again rely on their objection to Defendants' answer to interrogatory number 9. (Pls.' Mot. to Compel at 10.)

When considering the proportionality of the scope of the remaining claims and the burden on Defendants against what Plaintiffs request in interrogatory 11, the Court finds that asking Defendants to produce 13 years' worth of data would be overly broad and unduly burdensome. Plaintiffs are challenging a 2019 version of the Policy, and Defendants answered in part by providing seven years' worth of the MRC's review of media. This is a sufficient answer to this interrogatory.

### 8.  Interrogatory Number 12

Plaintiffs requested Defendants "[i]dentify in writing the reason for denial of each movie giving documentation for the denial of each movie denied by [the] Media Review Committee since 2007."  (Pls.' Disc. Reqs. at 8.)  Defendants objected that this interrogatory was partially irrelevant, overly broad, and unduly burdensome, notably because it would include "all MSOP clients who have ever requested review of media" and "would require reviewing each client file to identify contraband notices, reviewing each notice to identify [those] related to media, and then determining the reason for denying the movie."  (Defs.' Resps. at 12.)

Plaintiffs note that the disclosure of other MSOP clients' information may be subject to laws such as HIPPA, but that such information can be redacted and therefore persist in their request.  (Pls.' Mot. at 11.)  Plaintiffs specifically seek "Notice of Secure forms" prior to 2009 and contraband notices from 2009 to the present which deal with media requests, because these forms would detail the decision on why videos were approved or denied.  (*Id.*)

As discussed in the above section, Defendants have already provided seven years' worth of the MRC's review of media, which detail the name and rating of the media and whether it was prohibited or permitted.  Defendants have also noted that often these minutes contain the reason for denial.  (Defs.' Mem on Mot. to Compel at 4.)  It would be unduly burdensome to compel Defendants to review every contraband notice (or older related forms), identify which were media-related, and redact personal information of other MSOP clients.

### 9.  Conclusion

As detailed above, many of Plaintiffs' interrogatories were disproportional, unduly burdensome, overly broad, or sought irrelevant information.  Information relating to the reasoning behind the Policy's treatment of unrated and not rated videos, however, is highly relevant to the surviving First and Fourth Amendment claims.  For the foregoing reasons, the Court will grant this motion in part and require Defendants to answer interrogatories 9 and 10 as outlined above at section III(A)(6).  The motion shall be denied in all other respects.

### B.  Motion to Appoint Counsel

Plaintiffs have previously requested referral to the Pro Se Project operated by the Minnesota Chapter of the Federal Bar Association.  (Pls.' Mot. for Recommendation to the Pro Se Project, ECF No. 36; *see also* August 11, 2020 Letter to the Court, ECF No. 44.) The Court denied Plaintiffs' motion.  (ECF No. 41.)  When Plaintiffs filed a Motion to Reconsider this Court's decision (ECF No. 49), the Honorable Eric C. Tostrud, District Judge for the United States District Court for the District of Minnesota, denied the motion and affirmed this Court's ruling.  (ECF No. 55.)

Plaintiffs now move the Court to appoint counsel.  (ECF No. 58 at 2.)  In this motion, Plaintiffs rely on much of the same case law they did in their Motion to Reconsider this Court's Order denying their Motion for Recommendation to the Pro Se Project.  (*Compare* ECF No. 49 at 2-3 *with* ECF No. 58 at 2-3.)

While "[t]he court *may* request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1) (emphasis added), there is "no constitutional or statutory

14

right to appointed counsel" in civil cases. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) (per curiam). As there has been no significant change in circumstances since the Court's August 11, 2020 Order, the Court will deny this motion without prejudice. (*See* ECF No. 41 at 2-4.) Should this matter proceed to trial, Plaintiffs may renew their request for counsel at that time. *See Trotter v. Lawson*, 636 F. App'x 371, 373 (8th Cir. 2016) (per curiam). (*See also* ECF No. 41 at 3-5 (denying Plaintiffs' motion for referral to the pro se project without prejudice and informing Plaintiffs they could request appointment of counsel at the time of trial.).)

### C. Motion to Preserve Evidence

Plaintiffs deposed Defendant Dr. Nicole Elsen by video on October 13, 2020. (*See* Non-Doe Defs.' Resp. to Pls.' Mot. to Preserve Evidence ("Defs.' Resp. to Pls.' Mot. to Preserve") at 1-2, ECF No. 65.) Plaintiffs now move the Court to order Defendants to preserve all emails and instant messaging that Dr. Elsen received on any device on that date from 9:30 a.m. to 3:30 p.m., based on their belief that she was being coached during her deposition. (Pls.' Mot. to Preserve Evidence at 1-2, ECF No. 62.) In support of this claim, Plaintiffs cite that: (1) Dr. Elsen sometimes waited 8-10 minutes before answering questions during the deposition; (2) it was "obvious" that Dr. Elsen often looked at her computer screen during the deposition; and (3) Plaintiffs could hear what they identified as "the sound of messages coming in on her instant messaging software" during the deposition. (*Id.* at 2.)

Defendants state that, in response to Plaintiffs' discovery request for these emails and instant messages, they agreed to produce relevant communications and, after

conducting a search, they found nothing relevant to disclose to Plaintiffs. (Defs.' Resp. to Pls.' Mot. to Preserve at 2.) Defendants argue that Plaintiffs have not provided factual basis for the assertion that Dr. Elsen was coached in her deposition and that they should not be required to preserve or disclose irrelevant evidence to Plaintiffs.[10] (*Id.* at 3-5.)

"The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation." *E*Trade Sec. v. Deutsche Bank, AG*, 230 F.R.D. 582, 588 (D. Minn. 2005). As previously stated when analyzing Plaintiffs' motion to compel,[11] however, "some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer*, 981 F.2d at 380; *see Haddley*, 2018 WL 2180253, at *3 ("[T]he scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation.").

The evidence Plaintiffs cite in support of their theory that Dr. Elsen was coached during her deposition is speculative at best. For their part, Defendants have conducted a review of the communications Dr. Elsen received during her deposition and have determined they are "outside the scope of this lawsuit," as well as the deposition. (Defs.' Resp. to Mot. to Preserve Evidence at 3; *see also id.* at 3-4.) Defendants are under no

---

[10] Defendants also argue Plaintiffs' motion should be denied on the basis that they did not meet and confer with Defendants prior to filing this motion. (Defs.' Resp. to Pls.' Mot. to Preserve at 4 n. 2 (citing D. Minn. LR 7.1(a).) The Court reminds Plaintiffs that while they are litigating this matter pro se, they must comply with all applicable rules, laws, and the like in this case. *See Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). The Court may in the future deny motions if Plaintiffs do not make a good-faith effort to meet and confer with Defendants as required under Local Rule 7.1(a).

[11] *See supra* at Section III(A)(1).

obligation to preserve evidence for which no threshold showing of discoverability, much less relevance, has been made.  Therefore, this motion shall be denied.

## IV.  ORDER

Therefore, based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Compel Supplemental Answers to Interrogatories (ECF No. 50) is **GRANTED IN PART AND DENIED IN PART.**

    a. Defendants shall answer interrogatories 9 and 10 and list any official records, written statements, policies, or documents from the last five years that address why unrated and not rated videos are difficult to review and justify different treatment under the Policy than videos that may be reviewed, to the extent this information exists.  Defendants shall answer on or before 14 days from the date of this Order.

    b. The motion is denied in all other respects.

2. Plaintiffs' Motion for Appointment of Counsel (ECF No. 58) is **DENIED**.

3. Plaintiffs' Motion to Preserve Evidence (ECF No. 62) is **DENIED**.

4. Each party shall bear its own costs and attorney fees.  *See* Fed. R. Civ. P. 37(a)(5)(C).

5. All prior consistent orders remain in full force and effect.

[continued on next page]

6. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Date: February __8__, 2021              _____*s/Tony N. Leung*_____
                                        Tony N. Leung
                                        United States Magistrate Judge
                                        District of Minnesota


                                        *Jannetta, et al. v. Minnesota Dep't of Human*
                                        *Servs., et al.*
                                        Case No. 19-cv-2622 (ECT/TNL)